UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| STRATEGIC CAPITAL CORPORATION, *et al*, | } } } |
| Plaintiffs, | } } |
| VS. | } CIVIL ACTION NO. H-08-1651 |
| | } |
| NEW STRONG GROUP LIMITED, *et al*, | } } |
| Defendants. | } |

**OPINION & ORDER**

Pending before the Court are Defendant New Strong Group Ltd.'s ("New Strong") Motion for Summary Judgment (Doc. 15), and the responses and replies thereto. Also pending before the Court are Intervenors Jose Luis Tovar, Sr., ("Tovar") Jose Mario Tovar ("Mario Tovar"); Francis J. Fair ("Fair"); and A.P. Boston P.C.'s (collectively "the Intervenors") Motion for Partial Summary Judgment (Doc. 70). For the reasons explained below, the New Strong's Motion for Summary Jugdment (Doc. 15) is GRANTED-IN-PART and DENIED-IN-PART and Intervenors' Motion for Partial Summary Judgment (Doc. 70) is DENIED.

**Background & Relevant Facts.**

This case concerns the distribution of proceeds from the sale of a vessel, the M/V Dixie Patriot ("The Dixie Patriot"), a lift boat of 176' in length and 752 tons. Doc. 15 Exh. A-1 at 1. More specifically, after distribution of proceeds to the lender (of the acquisition), the shareholders, and various third parties, an estimated amount of $3,424,215.36 ("the remainder amount" or "the escrow sum") remains in escrow for distribution. The issue before the Court is whether all the conditions precedent are met under the contract governing the distribution of proceeds in escrow so that New Strong should receive this remainder amount.

Patriot Liftboat, the lender who had funded the acquisition of The Dixie Patriot disputed with the owner of the ship, KSES (USA) Inc. ("KSES"), whether it had an option to buy the boat.  Doc. 15 Exh. A-1 at 13.  This brought about the first of two "Compromise and Settlement Agreements" (Settlement Agreement No. 1).  *Id*.  In Settlement Agreement No.1 Patriot Liftboat agreed to relinquish all its rights to The Dixie Patriot only after the ship was sold, and Patriot Liftboat was paid approximately $11,000,000.  *Id*. at 13-14.

This left the shareholders of KSES, and other third parties to wind down the corporation.  Doc. 15 at 3.  Accordingly, on September 6, 2007, the shareholders and third parties executed a second "Compromise and Settlement Agreement" (Settlement Agreement No. 2) that provided for the winding down of KSES by distributing the remaining proceeds from the sale of the Dixie Patriot to shareholders, various third parties, and creditors.  Doc. 15 Exh. A-1 at 2; Doc. 15 at 3.  Specifically, the opening statement to Settlement Agreement No.2 stated in relevant part:

> . . . the Parties . . . desire to settle with finality, compromise, dispose of, and release all claims and demands of any of them that have been or could have been asserted, relating to or arising out of the ownership of KSES USA, transactions between the Parties, the sale of the vessel known as the M/V Dixie Patriot, and/or the relationships between the Parties hereto (and their affiliates) . . .

Doc. 15 Exh. A-1 at 2.  Paragraph Three of Settlement Agreement No.2 went on to specify the exact amounts that would be distributed to the parties.  *Id*. at 2-3.  The undisputed evidence showed that New Strong was a 25% shareholder in KSES.   It agreed to take on the additional risk of receiving the majority of its share of the proceeds only after the creditors were paid, unlike the other shareholders who received their share of the proceeds before the creditors were paid.  Doc. 15 at 15.  Paragraph Three, titled "Distribution of Sale Proceeds," section (vii) reads:

> $7,624,021 shall be put into a separate escrow account at Whitney Bank to pay for the claims and wind down expenses estimated on Exhibit B with any excess funds

to be paid to New Strong after payment in full of the claims and wind down
expenses estimated on Exhibit B.

Doc. 15 Exh. A1 at 3.  Exhibit B attached to Settlement Agreement No.2 is titled "KSES USA

LIQUIDATION BUDGET."  Doc. 15 Exh. A-1 at 34.  It contains a simple list of creditors and

expenses with accompanying estimated dollar amounts.  *Id.*  For example, the first on the list is

"Office Lease" and parallel to that the numerical figure "72,000."  *Id.*  Next on the list is "Power

Marine" and the figure "1,500,000."  *Id.*  Power Marine was the operator of The Dixie Patriot in

charge of its management and operation.  Doc. 53 Exh. 6 at 1.   Also on the list is "L. Tovar

Salary" for 24,000 and "Directors' Fees" for 22,500.  Doc. 15 Exh. A-1 at 34.  Jose Luis Tovar,

Sr. ("Tovar"), was the President (and Director) of KSES.  Doc. 53 Exh. 2 at 1.  According to

Tovar, management at KSES would continue to be paid until the transactions contemplated by

the Agreements were completed.  Doc. 53 Exh.2 at 3.  Additionally, on Exhibit B was "Maritime

Counsel" for "40,000"; and "Corporate Counsel" for "50,000."  Doc. 15 Exh. A-1 at 34.

According to KSES's pleadings, Bell, Ryniker & Letourneau ("Bell Ryniker") served as

"Maritime Counsel" and A.P. Boston P.C. served as "Corporate Counsel."  Doc. 53 at 5.

In order to implement the winding down set forth on paper by Settlement

Agreement No.2, KSES and New Strong engaged Strategic Capital Corporation ("SCC") to act

as an independent third party.  Doc. 15 at 5.  On October 3, 2007, in a letter of engagement, SCC

wrote to Tovar to undertake, among other things,  to "[r]eview and approve disbursements

consistent with the transactions and liquidation events contemplated by the Settlement

Agreement."  Doc. 15 Exh.2 at 1.  On the same date this relationship was formalized in an

"Escrow Agreement" where SCC was termed the "independent liquidation agent and in which

KSES was the "Principal" and New Strong was the "beneficiary of the residual of the Subject

Matter of the Escrow."  Doc. 15 Exh. 3 at 1.  The purpose of the Escrow Agreement was "[t]o

secure the liquidation obligations of Principal (KSES) under that certain Confidential and Compromise Settlement Agreement (Settlement Agreement No.2) by and among New Strong . . . KSES . . . (and the other parties)." *Id*.   Whitney Bank, acting as the escrow agent of the Escrow Agreement contracted to distribute the escrow sum according to the directions of SCC. *Id*. at 2.   Specifically, Whitney Bank would, per SCC's instructions, "pay the obligations of [KSES]" and after that pay over the remainder to New Strong.  *Id*.  Although KSES could direct where the remainder amount could be invested while in escrow, New Strong would pay taxes on all interest earned under the Escrow Agreement.  *Id*. at 2.

On October 3, 2007, the Dixie Patriot was sold.  Doc. 53 Exh.2 at 3.  After the sale, with the help of numerous legal counsel, the parties to Settlement Agreement No.1 and No.2 proceeded, in accordance with the agreements, to unwind KSES.  On March 23, 2008, Power Marine, The Dixie Patriot's operator, contacted KSES to inform it that Power Marine was the defendant in a class action lawsuit that "concerned" the Dixie Patriot.  *Id*.  According to Tovar, due to unidentified indemnity and contribution obligations that arose out of the Operating Agreement between KSES and Power Marine, the class action lawsuit threatened "potential *in rem* exposure to" The Dixie Patriot.  *Id*. at 3-4.  In fact, Power Marine itself must have agreed in this analysis because it made repeated demands upon KSES for defrayment of attorney fees and costs involved in the defense of the class action lawsuit.  *Id*. at 4.  Because KSES believed that these demands by Power Marine fell under the definition of expenses due to Power Marine under Settlement Agreement No. 2 as well as the potential future liability of Power Marine to the plaintiffs in the class action lawsuit, KSES requested SCC to hold the balance of the escrow fund until the class action lawsuit was resolved.  *Id*.

New Strong was informed of the lawsuit against Power Marine and KSES' instruction to SCC to freeze distribution of the remainder amount until the lawsuit was resolved. *Id*. at 3.  In response to this turn of events, New Strong sought the legal opinions of Bell Ryniker and A.P. Boston P.C., as well as Bracewell & Giuliani L.L.P. and Riske, Salisbury & Kelly P.C. *Id*. at 4.  The costs of this counsel were invoiced to KSES. *Id*.  According to Tovar these legal counsel expenses now became part of the estimated expenses on Exhibit B and were further reason why the escrow amount should be placed on hold.  *Id*.  Lastly, Tovar believed that the plaintiffs in the class action lawsuit against Power Marine might, if successful, also become creditors with a claim to the escrow amount.  *Id*.

On April 15, 2008, New Strong sent a letter requesting Whitney Bank, as escrow agent, to wire transfer the remainder of the escrow amount to New Strong, less $125,000 to cover the office lease of KSES.  Doc. 15 Exh. 5 at 1.  In the alternative, New Strong requested, under Paragraph Four of the Escrow Agreement, Whitney Bank to deposit this amount in the court registry.  *Id*.  On April 18, 2008, Michael Reizer ("Reizer"), as authorized representative of New Strong, and recipient of periodic statements of account by SCC updating New Strong as to disbursements of the escrow amount, stated he was "unaware of any of the estimated claims and wind down expenses on Exhibit B of [Settlement Agreement No. 2] . . . that have not been paid in full, with the exception of the KSES office lease for which funds have specifically been set aside and earmarked for payment in full."  Doc. 15 Exh. 4 at 1-2.  Tovar, in his unsworn declaration pursuant to 28 USC § 1746, stated that as of October 7, 2008, the following expenses due under Settlement Agreement No. 2 remained unpaid:   $75,308.68 to Tovar in salary, director's fees and expense reimbursements; $17,500 in Director's Fees; $50,000 to A.P. Boston P.C.; $5,4000 to Bell Ryniker; and, lastly, "at least" $50,000 to Power Marine via the Operating

Agreement.  Doc. 53 Exh. 2 at 5.  These parties argue in contravention of New Strong's Motion for Summary Judgment that these are obligations due under Settlement Agreement No. 2 that must be paid before New Strong is paid the remainder of the escrowed funds.  New Strong responds that the purported evidence for these sums is unsupported by any documentation and are insufficient to counter the Reizer affidavit attached to New Strong's Motion for Summary Judgment, which documents the monthly statements of payments from the escrow account. Doc. 58 at 7-8.  There is no dispute that the sums set forth in the unsworn declaration were incurred after the settlement agreements.

## II.        Summary Judgment Standard

A party moving for summary judgment must inform the court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).   The substantive law governing the suit identifies the essential elements of the claims at issue and therefore indicates which facts are material.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The initial burden falls on the movant to identify areas essential to the nonmovant's claim in which there is an "absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). If the moving party fails to meet its initial burden, the motion must be denied, regardless of the adequacy of any response.  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  Moreover, if the party moving for summary judgment bears the burden of proof on an issue, either as a plaintiff or as a defendant asserting an affirmative defense, then that party must establish that no dispute of material fact exists regarding all of the

essential elements of the claim or defense to warrant judgment in his favor.  *Fontenot v. Upjohn*, 780 F.2d 1190, 1194 (5th Cir. 1986) (the movant with the burden of proof "must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor") (emphasis in original).

        Once the movant meets its burden, the nonmovant must direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial.  *Celotex*, 477 U.S. at 323-24.   The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Indust. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citing *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).  Instead, the non-moving party must produce evidence upon which a jury could reasonably base a verdict in its favor.  *Anderson*, 477 U.S. at 248; *see also DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).   To do so, the nonmovant must "go beyond the pleadings and by [its] own affidavits or by depositions, answers to interrogatories and admissions on file, designate specific facts that show there is a genuine issue for trial."   W*ebb v. Cardiothoracic Surgery Assoc. of North Texas, P.A.*, 139 F.3d 532, 536 (5th Cir.1998). Unsubstantiated and subjective beliefs and conclusory allegations and opinions of fact are not competent summary judgment evidence.  *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998); *Grimes v. Texas Dept. of Mental Health and Mental Retardation*, 102 F.3d 137, 139-40 (5th Cir. 1996); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994);  *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992), *cert. denied*, 506 U.S. 825 (1992).  Nor are pleadings summary judgment evidence.  *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1046 (5th Cir. 1996) (citing *Little*, 37 F.3d at 1075).  The non-movant cannot discharge his burden by offering vague allegations and legal conclusions.  *Salas v.*

*Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992); *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 889 (1990).  Nor is the court required by Rule 56 to sift through the record in search of evidence to support a party's opposition to summary judgment. *Ragas v. Tennessee Gas Pipeline Co*., 136 F.3d 455, 458 (5th Cir. 1998) (citing *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992)).

Nevertheless, all reasonable inferences must be drawn in favor of the non-moving party.  *Matsushita*, 475 U.S. at 587-88; *see also Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003).  Furthermore, the party opposing a motion for summary judgment does not need to present additional evidence, but may identify genuine issues of fact extant in the summary judgment evidence produced by the moving party.  *Isquith v. Middle South Utilities, Inc.*, 847 F.2d 186, 198-200 (5th Cir. 1988).  The non-moving party may also identify evidentiary documents already in the record that establish specific facts showing the existence of a genuine issue.  *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990).   In reviewing evidence favorable to the party opposing a motion for summary judgment, a court should be more lenient in allowing evidence that is admissible, though it may not be in admissible form.  *See Lodge Hall Music, Inc. v. Waco Wrangler Club, Inc.*, 831 F.2d 77, 80 (5th Cir. 1988).

## III.   **New Strong's Motion for Summary Judgment.**

### a.   **The Contract.**

New Strong asks the Court for a declaratory judgment, pursuant to  28 USC § 2201, that the escrow funds now in the Court's registry should be transferred immediately to New Strong. Both parties are in agreement that this can occur only after all the expenses listed on Exhibit B of

Settlement Agreement No. 2 are paid. The dispute is what fairly constitutes Exhibit B expenses, and that question is a straight-forward question of contract interpretation.

The Court interprets the contract at issue under Texas law. "In the context of contract interpretation, only when there is a choice of reasonable interpretations of the contract is there a material fact issue concerning the parties' intent that would preclude summary judgment." *Amoco Prod. Co. v. Texas Meridian Res. Exploration, Inc.*, 180 F.3d 664, 669 (5th Cir. 1999). Under Texas law, the interpretation of an unambiguous contract is a question of law for the court to decide by "looking at the contract as a whole in light of the circumstances present when the contract was entered." *Philadelphia Am. Life Ins. Co. v. Turner*, 131 S.W.3d 576, 587 (Tex. App.-Fort Worth 2004, no pet.). "If a written contract is so worded that it can be given a definite or certain legal meaning, then it is not ambiguous." *Nat. Union Fire Ins. Co. of Pittsburgh, Pa. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995). If, however, the language of the contract is subject to two or more reasonable interpretations or meanings, it is ambiguous. *Frost Nat'l Bank v. L & F Distribs.*, 122 S.W.3d 922, 930 ("[A] contract is ambiguous only when application of the pertinent rules of interpretation to the face of the instrument leaves it genuinely uncertain which of two or more meanings is the proper meaning.") "A contract is not ambiguous merely because the parties to an agreement proffer conflicting interpretations of a term." *Int'l Turbine Servs., Inc. v. VASP Brazilian Airlines*, 278 F.3d 494, 497 (5th Cir. 2002).

Under Texas law, "the primary concern of a court construing a written contract is to ascertain the true intent of the parties as expressed in the instrument." *Nat. Union Fire Ins. Co. of Pittsburgh, Pa.*, 907 S.W.2d at 520. "In construing a contract under Texas law, courts must examine and consider the entire writing and give effect to all provisions such that none are

rendered meaningless." *Int'l Turbine Servs., Inc.*, 278 F.3d at 497. "The terms used in the [contract] are given their plain, ordinary meaning unless the [contract] itself shows that the parties intended the terms to have a different, technical meaning." *Am. Nat. Gen. Ins. Co. v. Ryan*, 274 F.3d 319, 323 (5th Cir. 2001).

Focusing on the relationship between the stated purpose of the contract and the specific provision dealing with when to pay New Strong, the contract unambiguously exhibits an intent to release funds to New Strong before the potential occurrence of the Power Marine liability. Paragraph Three of Settlement Agreement No. 2 states that New Strong will be paid after payment of "the claims and wind down expenses estimated on Exhibit B." Settlement No. 2 was executed in tandem with Settlement No. 1. Settlement No.2's stated purpose was to "settle *with finality*" all claims and demands by all the parties who had an interest in The Dixie Patriot. The plain language assumption is that the expenses were estimated on Exhibit B and that the end of the matter was in sight for the parties. In other words, once the expenses estimated on Exhibit B had been paid, New Strong would be paid its share of the proceeds and could go its own way.

Settlement Agreement No.2 was executed in September 2007. KSES only became aware of the class action lawsuit against Power Marine in May 2008. By Tovar's own admission the extent of the future liability is uncertain and unliquidated. Doc. 53 Exh. 2 at 3. Thus, this new liability was not contemplated by the contract as within the estimated expenses of Exhibit B, as KSES argues. The liability at issue cannot even at the present time be estimated. Power Marine is a creditor listed on Exhibit B but for a set sum of $1,500,000, which the parties do not dispute has been paid before the class action lawsuit arose. The contract did not contemplate that the amount due under the Exhibit B estimate would include the sum Power Marine might become liable for under a future class action lawsuit.

KSES also argues that payment to New Strong cannot be made because it is prevented by Wyoming corporate law.   Specifically, KSES argues that the release of the remainder amount to New Strong would be considered a distribution to a shareholder prohibited by Wyoming's version of the corporate law restrictions on such distributions where they leave the corporation unable to meet its obligations to creditors.   The Wyoming Statute at issue, §17-16-640 states that:

> (a) A board of directors may authorize and the corporation may make distributions to its shareholders subject to restrictions imposed by the articles of incorporation and the limitation in subsection (c) of this section.
>
> . . .
>
> (c) No distribution may be made if, after giving it effect:
>
>   (i) The corporation would not be able to pay its debts as they become due in the usual course of business; or
>
>   (ii) The corporation's total assets would be less than the sum of its total liabilities plus (unless the articles of incorporation permit otherwise) the amount that would be needed, if the corporation were to be dissolved at the time of the distribution, to satisfy the preferential rights upon dissolution of shareholders whose preferential rights are superior to those receiving the distribution.

According to KSES, the class action lawsuit against Power Marine constitutes such a liability of KSES that it may render KSES unable to meet its obligations if it were to release the remainder of the escrow funds to New Strong, KSES's shareholder.   This line of reasoning, however, assumes that the board of directors of KSES retains authority to authorize or prohibit the distribution to New Strong.   As New Strong correctly points out, the remainder amount no longer consists of assets of KSES, but the funds have been placed in the hands of Whitney Bank to be distributed at the instructions not of KSES but of SCC per Settlement Agreement No. 2.   *See generally*, *Hanby v. First Nat'l Ba*nk, 163 S.W. 415, 419 (Tex. Civ. App. 1914) (discussing various definitions of escrow and finding lack of control by transferor of assets).   Section 17-16-

640 of Wyoming corporate law prohibits the board from *authorizing* such a distribution, here since the board has lost such authority altogether, the statute is inapplicable.

This statute exists to protect creditors of a corporation. In a case such as this, where the board only became aware of the threatened contingent and uncertain liability of a lawsuit against Power Marine after transferring control of the disputed assets to escrow, there is no question of the board taking advantage of escrow to circumvent the law and cheat creditors. In fact, to hold the opposite would be to hamper the ability of corporations to make any transfer at all lest they violate shareholder distribution laws because of as yet unforeseen future liabilities.

The Court declares that SCC should release the remainder amount to New Strong after paying only those amounts that were contemplated by Exhibit B. Those amounts contemplated by Exhibit B are those that can be directly linked to the dollar estimates provided on Exhibit B itself. Thus, the liabilities arising from and associated with the class action lawsuit against Power Marine for which KSES may be liable under the Operating Agreement are excluded because they were unforeseen and in the future at the time Exhibit B was drawn up. This also excludes the plaintiffs of the class action lawsuit against Power Marine, who cannot be construed as Settlement Agreement No. 2 creditors. This will additionally exclude director's fees, litigation costs and legal counsel that arose because KSES advised SCC to delay payment to New Strong.

The only Exhibit B item that remains to be unpaid is the office lease of KSES. If sufficient sums are set aside for the payment of the office lease in full, then the immediate distribution of the remainder amount to New Strong should be made.

Thus, declaratory relief is granted to New Strong on its motion for summary judgment. New Strong also asks for summary judgment for a claim for breach of contract

against KSES of Settlement Agreement No. 2 and the Escrow Agreement.  Beccause New Strong fails to brief these claims before the Court, the Court will deny summary judgment on the breach of contract claim.

    **b.**  **Further Discovery.**

    KSES and Intervenors make a request that New Strong's motion for summary judgment is inappropriate because further discovery is required to explore the meaning of "claims and wind down expenses" set forth in Paragraph Three of Settlement Agreement No. 2. "[P]laintiff's entitlement to discovery before a ruling on a motion for summary judgment is not unlimited and may be cut off when the record shows that the requested discovery will not be likely to produce facts he needs to withstand a summary judgment motion." *Paul Kadair, Inc. v. Sony Corp. of America*, 694 F.2d 1017, 1029-30 (5th Cir.1983). A district judge "may exercise his discretion to prevent the plaintiff from burdening the defendants with a needless round of discovery." *Id*. at 1030. This motion fails under Fed. R. Civ. P. 56(f) because movants fails to demonstrate that there is evidence lacking that is "essential to justify its opposition."  As the foregoing discussion demonstrates, the real issue before the court was a purely legal one of contract interpretation where the contract was unambiguous on its face.  *Amoco Prod. Co,* 180 F.3d at 669 (If contract is unambiguous on its face, summary judgment is appropriate.) Therefore, the Court has mapped out the resolution to summary judgment using the four corners of the contract as well as the circumstances of its execution and further discovery is not required.

**IV.**  **Intervenor's Motion for Partial Summary Judgment.**

    **c.**  **Judicial Privilege**

    Tovar, Mario Tovar, and Fair are directors of KSES, and A.P. Boston P.C. was

corporate counsel to KSES.  They intervene to claim that they are due expenses for director's fees and attorney fees under Settlement Agreement No. 2.  Thus, they seek declaratory relief under 28 USC § 2201 that their expenses should be paid out of the escrow fund before release of the remainder amount to New Strong.  New Strong brought a cross-claim against Intervenors for tortious interference with contract, arguing that their complaint tortiously interferes with New Strong's contractual right to receive the escrow fund from SCC.  Intervenors move for partial summary judgment, raising the defense of judicial privilege.

Intervenors argue that judicial privilege protects their filing of complaints in intervention from New Strong's cross claim for tortious interference.  They argue the wrong theory, however.  Judicial Privilege is, normally, a defense from a suit for libel or slander when the offending communications are made in connection with judicial proceedings.  *Matta v. May*, 118 F.3d 410, 415-416; *James v. Brown*, 637 S.W.2d 914 (Tex. 1982);  *Hernandez v. Hayes*, 931 S.W.2d 648 (Tex. App.– San Antonio 1996) .  It is also used as a defense to lawsuits brought against the filers of a *lis pendens*.  *Prappas v. Meyerland Community Improvement Association*, 795 S.W.2d 794 (Tex. App.–Houston [14[th] Dist.] 1990).   There is no case that applies judicial privilege as a defense against a claim for tortious interference.  It is just the opposite.   In *International Shortshop, Inc. v. Rally's Inc.* 939 F.2d 1247, 1268-69 (5th Cir. 1991) the defense was raised and rejected by the Fifth Circuit.

### Corporate Privilege.

New Strong brings a claim for breach of contract against Tovar.  The basis of this claim is that, because Tovar is a signatory to Settlement Agreement No. 2, he breached this contract when he contacted SCC to advise them he believed they should not disburse the remainder of the funds in escrow to New Strong until the Power Marine liability was paid for.

Tovar counters that when he advised SCC he did so not in his individual capacity as a signatory of the Settlement Agreement No. 2 (where he received $3.5 million of the proceeds) but as a director of KSES, out of concern that KSES would be left unable to meet its obligations to Power Marine if the remainder amount was released to New Strong.  As such, Tovar argues he is insulated from a claim of breach of contract by corporate privilege.  "The corporate form normally insulates shareholders, officers, and directors from liability for corporate obligations." *Castleberry v. Branscum*, 721 S.W.2d 270, 271 (Tex. 1986).  To the extent Tovar acted as an officer of KSES, New Strong failed to rebut the assertion of corporate privilege with evidence of abuse of the corporate form.  Thus, Tovar is insulated as a director from the claim of breach of contract.  *Id*. (Where corporate form is abused, corporate veil may be pierced to reach directors, shareholders and officers.)

      New Strong, however, counters by arguing that Tovar acted in his individual capacity as a signatory to Settlement Agreement No. 2 and, thus, he is not protected by KSES's corporate form.  According to New Strong, Tovar acted in his individual capacity by filing his intervention seeking to prevent release of the remainder amount to New Strong before his claims for payment were met.  Tovar's own unsworn declaration submitted in support of KSES's response to New Strong's Motion for Summary Judgment seeks payment of fees directly to Tovar before SCC can release the remainder amount to New Strong.  Doc. 53 Exh. 2 at 4.  Tovar argues he only acted as an officer of KSES because KSES' counsel advised him that release of the escrow amount would be against Settlement Agreement No. 2 and detrimental to KSES's interests.  In support of this proposition, Tovar submits a letter from KSES's counsel to that effect.  Doc. 70 Exh. 3 at 1-3.  Thus, genuine issues of material fact remain as to whether Tovar acted in his individual capacity or his capacity as an officer of KSES when he advised SCC not

to release the escrowed funds to New Strong.  If Tovar acted even partially out of his individual capacity, the corporate privilege would not be sufficient to defeat New Strong's claim for breach of contract.  Thus, Intervenors' motion for summary judgment on the breach of contract claim on the grounds of corporate privilege is denied.

## V.     <u>Conclusion</u>

Accordingly, it is hereby ORDERED that New Strong's Motion for Summary Judgment (Doc. 15) seeking declaratory judgment that all conditions precedent to release of escrowed funds pursuant to Settlement Agreement No. 2 have been met is GRANTED.  New Strong's Motion for Summary Judgment for breach of contract of Settlement Agreement No. 2, and for breach of contract of the Escrow Agreement, is DENIED.  It is further

ORDERED that Intervenors' Motion for Partial Summary Judgment (Doc. 70) seeking dismissal of New Strong's claim of tortious interference with contract on the grounds of judicial privilege is DENIED.  It is further

ORDERED that Intervenors' Motion for Partial Summary Judgment seeking dismissal of New Strong's claim for breach of contract against Jose Luis Tovar, Sr. on the grounds of corporate privilege is DENIED.

SIGNED at Houston, Texas, this 24th day of April, 2009.


_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE